1  Rhonda Lunsford, SBN 219239
   P.O. Box 31
2  San Leandro, CA 94577
   Telephone:(510) 759-9529
3  rrlunsford@hotmail.com

4  Attorney For Plaintiff

5

6              **UNITED STATES DISTRICT COURT**

7            **NORTHERN DISTRICT OF CALIFORNIA**

8               **SAN FRANCISCO DIVISION**

9

10  JOHN DOE                            ) Case No.: 24-CV-02371-RFL
                                        )           24-CV-09469-RFL
11              Plaintiff,              )           25-CV-02930-RFL
                                        )
12       vs.                            )
                                        )
13  U.S. OFFICE OF PERSONNEL            )
    MANAGEMENT, THE REGENTS OF THE      ) **AMENDED COMPLAINT**
14  UNIVERSITY OF CALIFORNIA, ROYAL     )
    AMBULANCE, BLUE CROSS BLUE          )
15  SHIELD ASSOCIATION, SUTTER EDEN     )
    MEDICAL CENTER, ALAMEDA HEALTH      ) **JURY TRIAL REQUESTED**
16  SYSTEM, DR. YOUSSEF E. YOUSSEF,     )
    VERONICA PERAZA, HYUNJI AHN,        )
17  SARA DULL, MISTI MEADOR, JACKIE     )
    DU, CHAD PANTIG, JACK HINSHAW, and  )
18  DOES 1-10, inclusive                )
                                        )
19                                      )
                                        )
20                                      )
                                        )
21                                      )
                                        )
22                                      )
                                        )
23                                      )
                                        )
24                                      )
                                        )
25                                      )
                                        )
26                                      )
                                        )
27                                      )
                                        )
28                                      )
                                        )

### I.    **INTRODUCTION**

1.    Plaintiff John Doe is a former employee and a person living with serious disabilities caused by a complex autoimmune disease Systemic Sclerosis (Scleroderma). He relies on health insurance benefits provided through the Federal Employees Health Benefits (FEHB) program for life-sustaining medical care. In 2024, Plaintiff required extended hospitalization and rehabilitation in the San Francisco Bay Area due to his condition. Instead of receiving appropriate care and support, he was subjected to a series of failures by those responsible for his well-being: his health plan administrators refused to authorize critical treatment, hospital officials attempted to discharge him without a safe plan in place, and he was even physically restrained for hours on an ambulance gurney against his will.

2.    This consolidated action seeks to hold all responsible parties accountable and to ensure that Plaintiff and others in his position are treated lawfully and humanely. The Defendants include OPM, the federal agency and insurance administrators who manage Plaintiff's health benefits, as well as Blue Cross Blue Shield Association, Alameda Health System, Eden Medical Center and Royal Ambulance, the medical providers and Misti Meador, Jackie Du, Chad Pantig, Jack Hinshaw, Dr. Youssef Youssef, Veronica Peraza, Hyunji Ahn and Sara Dull individuals who were involved in his care and discharge planning. Plaintiff asserts that Defendants' actions violated federal disability rights laws, his right to due process in the administration of his benefits, his rights under federal health care statutes, and state law. He also alleges that he was treated differently because of his disability and race, resulting in discrimination in the provision of medical services and benefits.

3.    By this Complaint, Plaintiff seeks relief including: (1) an order stopping any further unsafe discharge or denial of medically necessary care; (2) enforcement of his health

benefit rights so that he can access crucial medical treatment; (3) accommodations for his disabilities in the healthcare setting; and (4) compensation for the harm he has suffered. This pleading is filed as a consolidated amended complaint pursuant to the guidance of the Court, combining the claims from three related cases into one comprehensive action for efficiency and clarity. Plaintiff respectfully demands a trial by jury on all issues so triable.

## II.    JURISDICTION AND VENUE

4.  This Court has federal question jurisdiction over this action under 28 U.S.C. § 1331, because Plaintiff's claims arise under federal laws including the Rehabilitation Act, Americans with Disabilities Act, Title VII of the Civil Rights Act, the Fifth Amendment to the U.S. Constitution, and other federal statutes. The Court also has jurisdiction under 28 U.S.C. § 1343 because Plaintiff seeks relief for violations of his civil rights.

5.  The Court has supplemental jurisdiction over Plaintiff's related state law claims (false imprisonment) under 28 U.S.C. § 1367, as it arises from the same nucleus of operative facts as the federal claims.

6.  Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff received medical treatment in San Francisco and Alameda Counties, California, and several Defendants reside, operate, or transact business in this District.

7.  Intradistrict Assignment: Assignment to the San Francisco or Oakland Division is appropriate because the events in question occurred in San Francisco (UCSF Medical Center) and in Alameda County (Highland Hospital and Eden Medical Center), which are within the San Francisco/Oakland Division of this District.

### III.   **PARTIES**

8. **Plaintiff John Doe** is a resident of Oakland, California and an employee of a federal agency. At all relevant times, he was enrolled in a health insurance plan under the Federal Employee Health Benefits (FEHB) program, administered by the U.S. Office of Personnel Management and the Blue Cross and Blue Shield Association. Plaintiff suffers from a severe autoimmune condition (scleroderma) that causes tightening of the skin and connective tissues, leading to significant disabilities. He has permanent flexion contractures in his limbs that severely limit his mobility and manual dexterity. For example, he cannot walk without assistance and has limited ability to write and cannot take notes. Plaintiff is an "individual with a disability" as defined by federal law, and his condition substantially limits major life activities including walking, performing manual tasks, and caring for himself.

9. **Defendant Office of Personnel Management (OPM)** is an agency of the United States government. OPM administers the FEHB program, through which it contracts with private insurance carriers to provide health benefits to federal employees and retirees. OPM is responsible for overseeing Plaintiff's health benefits plan and adjudicating appeals of benefit denials. All actions by OPM described herein were taken under color of federal law.

10. **Defendant Blue Cross and Blue Shield Association (BCBSA)** is a federation of independent health insurance companies that, inter alia, sponsors the nationwide Service Benefit Plan under the FEHB program. Upon information and belief, through its member companies it acted as the carrier administering Plaintiff's FEHB health insurance coverage. The Blue Cross and Blue Shield Association (and/or its affiliates) receives federal funds in connection with the FEHB program and participates in federally funded health programs and is therefore subject to Section 504 of the

Rehabilitation Act and the Affordable Care Act § 1557 nondiscrimination provisions. It is also a "public accommodation" engaged in providing insurance services to the public. Blue Cross (through its agents) made initial decisions on Plaintiff's benefit claims as described below.

11. **Defendant The Regents of the University of California (Regents)**, sued in its official capacity and as doing business as **UCSF Medical Center (UCSF),** is a public entity and arm of the State of California. The Regents own and operate UCSF Medical Center in San Francisco, California, including the hospital where Plaintiff received treatment. The Regents receive federal financial assistance for their healthcare programs (including Medicare and Medicaid reimbursements) and are a public entity, making them subject to Section 504 of the Rehabilitation Act and Title II of the ADA. UCSF Medical Center was at all relevant times a provider of medical services to Plaintiff.

12. **Defendant Alameda Health System (AHS)** is a public healthcare system and an instrumentality of Alameda County, California. AHS operates several hospitals and care facilities in Alameda County, including Highland Hospital in Oakland, California. AHS receives federal financial assistance for its health programs and is a public entity and is therefore subject to Section 504 of the Rehabilitation Act and Title II of the ADA. Plaintiff received medical evaluation, care, and discharge planning through AHS's facilities and staff as described below.

13. **Defendant Sutter Eden Medical Center (Eden Medical Center)** is a hospital located in Castro Valley, California, operated by Sutter Health, a private non-profit health system. Eden Medical Center receives federal funds through Medicare and other federal health programs and is a place of public accommodation providing healthcare services. It is subject to Section 504 of the Rehabilitation Act and Title III of the ADA.

Eden Medical Center and its staff were involved in the events surrounding Plaintiff's care and discharge as described below.

14. **Defendant Royal Ambulance, Inc. (Royal Ambulance)** is a private company headquartered in San Leandro, California, that provides ambulance transportation services. Royal Ambulance is a licensed medical transportation provider and upon information and belief receives payments through Medicare or other federally funded health programs for its services. It is a place of public accommodation under Title III of the ADA and is also subject to Section 504 of the Rehabilitation Act as a recipient of federal funds. Royal Ambulance and its employees were involved in physically transporting Plaintiff during one of the incidents in question.

15. **Defendant Dr. Youssef E. Youssef** is a physician who, on information and belief, was employed by or affiliated with Alameda Health System (Highland Hospital) during the relevant time. Dr. Youssef was directly involved in Plaintiff's medical care and/or discharge planning. He is sued in his individual capacity and as an official of AHS for purposes of injunctive relief. At all relevant times, Dr. Youssef was acting under color of state law in his role as a physician in a public hospital.

16. **Defendant Veronica Peraza** is, on information and belief, a Care Management Manager at Alameda Health System or one of its hospitals. She was involved in case management and discharge planning decisions for Plaintiff. Ms. Peraza is sued in her individual capacity and for injunctive relief in her official capacity with AHS. She was acting under color of state law at all relevant times in connection with Plaintiff's discharge planning.

17. **Defendant Hyunji Ahn** is, on information and belief, a case manager at Blue Shield of California Federal Employee Program. Ms. Ahn participated in coordinating Plaintiff's care and transfer between facilities. She is sued in her individual capacity

and her official capacity and was acting under color of state law during the events described.

18. **Defendant Sara Dull** is, on information and belief, a case manager at Sutter Health's Eden Medical Center in Castro Valley, California. Ms. Dull was involved in coordinating Plaintiff's discharge. She is sued in her individual capacity. At relevant times, she was acting as an agent of a private hospital.

19. **Defendant Misti Meador** is, on information and belief, a Case Management Manager at the University of California San Francisco Medical Center (UCSFMC). She was involved in case management and discharge planning decisions for Plaintiff. Ms. Meador is sued in her individual capacity and for injunctive relief in her official capacity with UCSFMC. She was acting under color of state law at all relevant times in connection with Plaintiff's discharge planning.

20. **Defendant Jackie Du** is, on information and belief, a Case Manager at the University of California San Francisco Medical Center (UCSFMC). She was involved in case management and discharge planning decisions for Plaintiff. Ms. Du is sued in her individual capacity and for injunctive relief in her official capacity with UCSFMC. She was acting under color of state law at all relevant times in connection with Plaintiff's discharge planning.

21. **Defendant Chad Pantig** is, on information and belief, an Emergency Medical Technician at Royal Ambulance in San Leandro, California. Mr. Pantig was involved in coordinating and effectuating Plaintiff's hospital discharge transport related to events in Plaintiff's complaint. He is sued in his individual capacity. He was acting under color of state law at all relevant times in connection with Plaintiff's hospital discharge transport.

22. **Defendant Jack Hinshaw** is, on information and belief, an Emergency Medical Technician at Royal Ambulance in San Leandro, California. Mr. Pantig was involved in coordinating and effectuating Plaintiff's hospital discharge transport related to events in Plaintiff's complaint. He is sued in his individual capacity. He was acting under color of state law at all relevant times in connection with Plaintiff's hospital discharge transport.

23. **Defendants DOES 1–10** are other persons or entities currently unknown to Plaintiff who were involved in the violations alleged herein. This may include additional staff members of the hospitals or ambulance company, supervisors, insurers, or other entities responsible in some manner for the events. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

## IV.    FACTUAL BACKGROUND

**Plaintiff's Medical Condition and Need for Hospital Care**

24. **Serious Health Condition:** Plaintiff John Doe has a medical condition known as diffuse scleroderma (systemic sclerosis), which is a chronic connective tissue disease. This illness has caused extensive fibrosis (hardening) of his skin and damage to his joints, muscles, and internal organs. As a result, Plaintiff experiences severe contractures of his hands, arms, and legs, meaning his limbs are fixed in a bent position with limited range of motion. He cannot walk without assistance (he typically requires a wheelchair or walker) and he cannot use his hands effectively for tasks like writing, typing, or gripping objects. Plaintiff also suffers from related complications such as episodes of pain, fatigue, and difficulty breathing, which occasionally require intensive medical intervention.

25. **Disability and Functional Status:** Despite these disabilities, Plaintiff remains mentally alert and capable of communicating his wishes. He has managed his health condition for years and, with appropriate medical care and support, he can maintain a stable quality of life. However, in mid-to-late 2024, Plaintiff's condition worsened, and he required hospitalization to address serious symptoms and to undergo rehabilitation therapy. His treating physicians determined that he needed an extended inpatient hospital stay followed by a specialized rehabilitation program to improve his mobility and prevent further deterioration. This level of care was medically necessary due to his disability and the complex nature of his illness.

**Denial of Health Benefits by OPM/Blue Cross**

26. **FEHB Coverage and Initial Treatment Requests:** As a federal employee, Plaintiff relied on his FEHB health insurance plan to cover the costs of his treatment. His plan, the Blue Cross and Blue Shield Service Benefit Plan, is administered by the Blue Cross and Blue Shield Association under contract with OPM. Under federal law, if the insurance carrier (Blue Cross) denies coverage for a requested treatment, the enrollee can appeal first to the carrier and then to OPM for a final administrative determination (5 C.F.R. § 890.105). Plaintiff, through his doctors, sought pre-authorization and coverage for certain treatments related to his scleroderma, including intensive inpatient rehabilitation therapy and other specialized medical services.

27. **Repeated Benefit Denials:** Throughout 2022 and continuing, Blue Cross issued multiple denials of coverage for treatments that Plaintiff's physicians had ordered. These denials were identified by reference numbers in correspondence to Plaintiff (for example, Reference Nos. X7002, X6001, X0004, and others). The carrier often cited reasons such as the treatment being "not medically necessary" or "not covered" under

the plan, even though these treatments were in fact critical for Plaintiff's condition. Plaintiff timely pursued the available appeals for these denials. For at least two of the denials (Reference No. X7002 and Reference No. X6001), he requested reconsideration from Blue Cross and then appealed to OPM for review after Blue Cross upheld the denial. OPM eventually discontinued reviewing those appeals that means no right to sue letter was issued, effectively refusing to authorize the needed care. Plaintiff thereby exhausted his administrative remedies for those benefit claims. Under 45 CFR Part 147 group and individual health plans are required to provide continued coverage while an appeal is being considered; however, BCBSA cut off Plaintiff's benefits while his appeals were pending. Further, under this section there is a requirement that health plans allow a claimant to request an external expedited review if the final internal review concerns an admission, availability of care, continued stay or healthcare item or service for which the claimant received emergency services, but has not been discharged from the facility, and a decision rendered within 72 hours.

28. Plaintiff was never granted the ability to obtain an external expedited review instead BCBSA said his expedited review had to be done by OPM who would then hold it for months instead of making the required decision within 72 hours as required by the regulation under the ACA.

29. **Lack of Response and Futility:** For other denials, Blue Cross either did not respond to Plaintiff's timely appeal requests or dragged out the process beyond regulatory deadlines. In those instances, when Blue Cross did not respond, Plaintiff was unable to go to OPM, which would have been the next level of appeal. Plaintiff alleges that pursuing further OPM appeals for each denial became futile or impossible because of

the urgent nature of his health needs and the repeated failure of Blue Cross to even respond at the first level.

30. Blue Cross Blue Shield and its affiliates (BCBSA) failed to issue timely decisions on multiple reconsideration requests submitted by Plaintiff. Under 5 C.F.R. § 890.105(e), a lack of response within 30 days constitutes a deemed denial. However, the BCBSA Plan Brochure further states that for non-urgent pre-authorization appeals, a decision must be rendered within 15 days, with one allowable 15-day extension if additional information is required, provided the claimant is given timely notice. For urgent care claims, the Plan requires a decision within 72 hours or contact within 24 hours if more information is needed. Additionally, the Plan provides a separate disputed care claims process, including expedited timelines for urgent care claims. To further complicate matters, OPM's correspondence to Plaintiff has inconsistently cited a 60-day response period, though actual decisions have been delayed for as long as over eight months. This lack of a clear, consistent, and enforceable policy for responding to Plaintiff's claims has deprived him of meaningful administrative review and has obstructed timely access to medically necessary care.

31. The conflicting and inconsistently applied response deadlines under 5 C.F.R. § 890.105(e), the BCBSA Plan Brochure, and OPM's own correspondence deprived Plaintiff of a clear and reliable administrative process. This regulatory ambiguity and failure to adhere to stated timelines not only frustrated Plaintiff's right to timely and effective review but also resulted in constructive denials of essential care. The lack of a coherent, consistently applied policy violates the principles of due process, frustrates the purpose of the Rehabilitation Act and FEHBA, and imposes an unreasonable burden on disabled beneficiaries seeking medically necessary treatment.

32. Plaintiff technically had 120 days to request OPM review of his denied claims, he was during that period, physically hospitalized and fighting to obtain care, making further paperwork appeals impracticable. Nonetheless, Plaintiff continued to press for coverage as best as he could under the circumstances.

33. **OPM Appeal X0004:** One particular appeal, Reference No. X0004, concerned critical inpatient hospital treatment that was denied while Plaintiff was hospitalized between September 9, 2024 and January 13, 2025. Plaintiff appealed that denial to Blue Cross and then escalated it to OPM on or about October 22, 2024. On or about January 15, 2025, OPM issued a letter approving eight days of the hospital stay (Plaintiff received the letter shortly thereafter, around January 24, 2025, after Plaintiff had been discharged). This OPM decision on appeal X0004 was made after Plaintiff had already initiated litigation, but it represents a final administrative denial of an additional claim for benefits. Plaintiff has thus exhausted all required administrative remedies for the claims identified by Reference Nos. X7002, X6001, and X0004, which encompass key aspects of the treatment his doctors prescribed. To the extent any other benefit denials were not formally appealed to OPM, Plaintiff asserts that further efforts would have been futile because OPM's position and the plan's stance on covering his needed care were already evident from the appeals that were decided, OPM and Blue Cross had ample opportunity to correct their denials and provide coverage, but they failed to do so and this caused Plaintiff irreparable harm.

34. **Consequences of Denial:** The consequence of these benefit denials was that Plaintiff was left without insurance coverage for the full scope of care his condition required which is in violation of the regulations that state his coverage should remain intact while his appeals were in review. For example, his doctors recommended long-term acute care and rehabilitation program to help him maximize functional mobility in his

-12-

arms and legs. BCBSA refused to authorize this, meaning that once Plaintiff's acute

hospital treatment was concluded, there was no coverage in place for him to transition

to a rehab facility. Additionally, other supportive services or equipment (such as

specialized mobility devices or in-home care assistance at the level he required) were

denied. Plaintiff's ability to pay for such care out-of-pocket was limited, so he was

dependent on the FEHB insurance to cover it. The denial of benefits not only risked

Plaintiff's health but also put the hospitals in a difficult position regarding discharge

planning, because discharging a severely disabled patient without ensuring appropriate

post-hospital care can be unsafe.

35. **Potential Bias in Denials:** Plaintiff believes that the pattern of denials he experienced

was influenced by unlawful discrimination. His condition, scleroderma, is relatively

rare and has a higher prevalence and severity in African American patients (Plaintiff is

African American) and it is believed that in the United States, African Americans make

up roughly 70% of those diagnosed with this form of Scleroderma.

36. He alleges on information and belief that Defendants OPM and Blue Cross have

adopted or allowed policies and "medical necessity" guidelines that systematically

result in denying or limiting coverage for treatments of scleroderma and similar

conditions. These policies have a disparate impact on African American enrollees like

Plaintiff.  Furthermore, to the extent individuals at OPM or Blue Cross exercised

discretion in handling Plaintiff's appeals or inquiries, Plaintiff alleges that they failed

to provide him the same level of assistance or consideration they would afford to

enrollees of other races or to those without disabilities. For instance, rather than

treating his case with urgency and care due to the seriousness of his condition, OPM

officials responded with indifference to his plight. Plaintiff was effectively excluded

from full participation in the FEHB program's benefits on equal terms as others, due to

his disability and, at least in part, his race. In addition, Blue Cross failed to have Plaintiff's appeals reviewed by physicians practicing in the specialties that treat or have knowledge of the specialized disorder that Plaintiff suffers from.

**Hospitalization at UCSF and Attempted Discharge without Safe Plan**

37. **Admission to UCSF:** In September 2024, as Plaintiff's health needs intensified, he was admitted to UCSF Medical Center in San Francisco for inpatient treatment. At UCSF, he received care for complications of Scleroderma, including therapies intended to improve his joint mobility and medical management of his organ-related symptoms. UCSF Medical Center was aware of Plaintiff's insurance situation — namely, that his primary coverage was under the FEHB Blue Cross plan and that certain recommended medical services had not been approved by the insurer. Despite the insurance issues, UCSF proceeded to provide critical care to stabilize Plaintiff's condition.

38. **Discharge Planning Challenges:** Once Plaintiff's immediate medical crisis was brought under control, UCSF staff began planning to discharge him from the hospital. Given Plaintiff's condition, a safe discharge plan required either transferring him to a suitable rehabilitation or long-term acute care facility, or arranging for comprehensive home health support, to ensure he continued to receive necessary care and assistance with daily living. Plaintiff, due to his disabilities, could not simply be sent out of the hospital without support. Discharging him without a proper plan posed serious risks to his health and safety.

39. **Proposed Discharge Without Placement:** Despite these realities, in late December 2024 UCSF decided to discharge Plaintiff without securing any acceptable post-discharge accommodations. Plaintiff was supposed to be discharged on December 30, 2024, however he filed a TRO on December 29, 2024, which the Court denied. On or

-14-

about January 10, 2024, UCSF personnel informed Plaintiff that he would be discharged and transported home however, there was no one at home to provide care for him and they had not provided any additional in-home care services. Plaintiff expressed grave concerns and objected to being discharged in the absence of a safe and appropriate plan. He insisted that leaving the hospital without - a suitable care arrangement in place at discharge would endanger his health. The Plaintiff, who is unable to walk independently and needs help with basic tasks, had no suitable place to receive proper care if discharged from the hospital at that time. The Plaintiff requires the assistance of at least two or three people for his care, and his wife is unable to manage his care alone.

40. **Forced Discharge Attempt:** Instead of addressing Plaintiff's concerns or finding a safe solution, UCSF administrators (including, on information and belief, members of its case management department) attempted to force the discharge. They arranged for a private ambulance (Defendant Royal Ambulance) to come to the hospital to take Plaintiff away. On Friday, January 10, 2025, counsel for UCSF notified Plaintiff's wife via email that the hospital intended to discharge Plaintiff on Monday, January 13, 2025, notwithstanding the hospital's knowledge that Plaintiff's wife would be out of town and would be unable to return by that date. The hospital further conveyed that failure to comply with the discharge would result in the initiation of trespassing charges against Plaintiff, despite his medical vulnerability and inability to independently refuse or contest the discharge.

41. On or about January 13, 2025, Plaintiff was placed on a gurney by Royal Ambulance personnel. The ambulance staff strapped him down to the gurney with restraints. Plaintiff had repeatedly stated that he did not agree with the decision to discharge, however he did not resist. Plaintiff's distress escalated when the drivers threatened to

forcibly enter his home, despite knowing that no one would be present to provide care or assistance that evening. Plaintiff was kept restrained on the gurney for approximately five hours as alleged discussions took place between UCSF staff, the ambulance crew, and possibly other officials about where to send him. During this period, Plaintiff experienced significant distress, both due to physical discomfort (being strapped down for so long, unable to move his contracted limbs, causing pain, stiffness, and a loss of sensation in his lower extremities) and emotional trauma at being effectively held captive without knowing what would happen to him.  Plaintiff called 911 because he became increasingly fearful during the prolonged confinement in the back of the ambulance, as he lacked the physical ability to exit on his own and was uncertain of the ambulance personnel's intentions.

42. **Intervention and Stand-Down:** Royal Ambulance ultimately did transport Plaintiff to Highland Hospital that day. Highland contacted UCSF to say the discharge was unsafe and attempted to send Plaintiff back and UCSF refused to repatriate him into their facility.

43.  **Lack of ADA Accommodation at UCSF:** Throughout Plaintiff's UCSF hospitalization and the discharge ordeal, UCSF staff were fully aware of his disabilities (mobility and manual impairments) and his need for accommodation. Case in point, due to Plaintiff's physical limitations and the stress of his medical condition, Plaintiff was unable to fully retain all information discussed during care planning meetings. He specifically requested a notetaker, as a reasonable accommodation, and complete copies of the notes and records documenting all discussions concerning his care and discharge planning. Defendants refused to provide full and accurate records. Instead, they produced only selective, incomplete summaries of some discussions while withholding any documentation whatsoever from other meetings. This failure deprived

AMENDED COMPLAINT

Plaintiff of his right to fully access and review the complete records of decisions affecting his medical care and discharge, directly impeding his ability to meaningfully participate in his own care planning and appeal processes.

44. These requests were largely brushed aside. In failing to effectively communicate with Plaintiff and rushing to discharge him without appropriate accommodations, UCSF did not meet its obligation to accommodate his disability. Instead of engaging in an interactive process to address Plaintiff's unique needs, UCSF treated him as a problem to be removed, which Plaintiff contends was discriminatory given that a non-disabled patient or one with a robust support network would not have been handled in this manner.

**Further Involvement of Alameda Health System and Eden Medical Center**

45. **Transfer to Highland Hospital (AHS):** January 13, 2025, Defendant Royal Ambulance dropped Plaintiff off at Highland Hospital which is a part of Alameda Health System (AHS), which operates public health facilities in the region, Highland sought assistance in placement or further care for Plaintiff at another facility due to their lack of space. Approximately a day after Plaintiff's arrival, Highland transferred him to San Leandro Hospital.

46. **Care at Highland and AHS Staff Involvement:** At San Leandro Hospital, Plaintiff came under the care of AHS staff including Defendant Dr. Youssef E. Youssef (one of the physicians involved in his case) and Defendants Veronica Peraza and Hyunji Ahn (who handled case management for BCBSA). These individuals immediately faced the challenge of what to do next for Plaintiff, as San Leandro is an acute care hospital not equipped for long-term rehabilitation without a clear discharge plan. Plaintiff's

condition still warranted significant assistance — he could not be sent to live

independently and he still needed rehabilitative therapy to maximize his independence.

47. On January 15, 2025, Plaintiff was evaluated by San Leandro Hospital's Occupational

Therapy (OT), which confirmed that Plaintiff would benefit from rehabilitation at an

acute rehab facility (ARU) as well as inpatient skilled OT to improve his ability to

perform essential daily functions. The need for inpatient rehabilitation was obvious.

48. That same day, Plaintiff was also evaluated by Physical Therapy (PT), which

independently reached the same conclusion: Plaintiff needed ARU-level therapy and

was not at discharge baseline.

49. Also on January 15, 2025, Blue Cross Case Manager Hyunji Ahn contacted San

Leandro Hospital. There is no documentation of any follow-up, no active case

management, and no evidence of her advocating for medically necessary services—

despite the clear recommendations of multiple clinical teams.

50. On January 16, 2025, a wound care nurse evaluated Plaintiff and confirmed that he

required continuation of the daily wound care regimen prescribed by UCSFMC.

Despite this professional assessment, that care would later be inexplicably cut back in

direct contradiction of clinical standards. On or about that same day, placement

referrals were sent to rehabilitation, skilled nursing, and LTAC facilities on Plaintiff's

behalf.

51. On January 17, 2025, Plaintiff engaged with PT and OT, who assisted him in

ambulating from bed, further confirming his need for skilled rehabilitative support.

Yet, Defendants would soon manufacture false conclusions about Plaintiff being

"baseline" to prematurely discharge him.

52. On January 20, 2025, in a shocking display of disregard for Plaintiff's welfare, Dr.

Youssef E. Youssef and Case Manager Veronica Peraza informed Plaintiff that he was

AMENDED COMPLAINT

at "baseline" would receive no further therapy, no further placement assistance, and was being discharged home with minimal support—despite multiple medical professionals recommending otherwise.

53. When Plaintiff's representative, who had clearly advised staff that she was temporarily out of town on a family emergency until the following week, expressed concern and requested more time to find safe placement, Dr. Youssef and Ms. Peraza refused to cooperate and instead doubled down on the unsafe discharge.

54. Also on January 20, 2025, Ms. Peraza told Plaintiff that his wound care regimen was reduced from a medically indicated daily schedule to just three times per week—an unconscionable act of cost-cutting at the expense of patient's health. This type of cost-cutting is not unusual for Plaintiff. Some of the facilities went so far as refusing to purchase wound care supplies which necessitated Plaintiff providing his own. Some facilities went so far as refusing to clean his wounds daily even when he offered to use his own supplies.

55. From that point forward, Plaintiff received no further rehabilitative assistance to even get out of bed or maintain his current condition—let alone improve it.

56. Plaintiff alleges that both the determination that Plaintiff was at "baseline" and the decision to withhold treatment because of Plaintiff's disability status amounts to unlawful disability discrimination and violates Plaintiff civil rights, liberties and protections.

57. Further, these reckless decisions to withhold medical care effectively sabotaged any chance of Plaintiff qualifying for acute rehab or skilled nursing care by removing the very medical services that justified such placement. The actions of Defendants were calculated and arguably negligent, and overtly discriminatory.

58. On or about January 22, 2025, Kentfield Long Term Acute Care Hospital (LTAC) agreed to accept Plaintiff and requested authorization to admit him. BCBSA promptly

denied the request with no legitimate justification, once again leaving Plaintiff without any place to go for post-acute treatment and care.

59. In willful and malicious retaliation for the pre-notified absence of Plaintiff's representative, San Leandro Hospital Social Worker Roberto Gonzalez deliberately and unjustifiably contacted both Adult Protective Services (APS) and also the Oakland Police Department to initiate a fabricated "welfare check." Despite knowing that Plaintiff's representative was out of town with a confirmed return date, and fully aware that Plaintiff remained hospitalized under the facility's care, Gonzalez falsely mischaracterized the situation as patient neglect. His actions were not motivated by any genuine concern for patient welfare but were intended to intimidate, harass, and punish Plaintiff and his family for asserting their rights and resisting the hospital's unsafe and discriminatory discharge plan. This malicious misuse of public agencies subjected Plaintiff and his family to unwarranted fear, public scrutiny, and emotional distress, escalating an already precarious situation through coercive and retaliatory tactics.

60. On January 23, 2025, Dr. Youssef made comments in Plaintiff's medical record falsely portraying Plaintiff's representative as being uncooperative and claiming, without basis, that Plaintiff had been "hospital hopping." These notes were intentionally misleading, clearly designed to justify an unlawful discharge rather than to document clinical reality.

61. On January 24, 2025, Case Manager Shelly Chase of San Leandro Hospital finally engaged in substantive conversation with Blue Shield FEP Case Manager Ahn. The progress notes reflect that Ms. Ahn misrepresented key facts—including falsely stating that UCSFMC had paid for a power wheelchair.

62. On January 27, 2025, Dr. Youssef updated Plaintiff's medical record again to portray both Plaintiff and his representative as obstructing the discharge, further cementing a false narrative to avoid accountability.

63. On or about January 28, 2025, Dr. Youssef updated Plaintiff's medical record to state that San Leandro Hospital reached out to UCSFMC about discharge arrangements for Plaintiff and was allegedly told the hospital would have to seek a court order to discharge Plaintiff. Dr. Youssef further memorialized in Plaintiff's medical record that San Leandro Hospital would escalate the matter to the hospital's legal team, seemingly based upon misinformation received from USCFMC that suggested they actively sought and obtained a court order to discharge Plaintiff. This was a clear sign that Defendants knew their conduct was legally suspect.

64. On or about January 29, 2025, without prior warning, UCSFMC delivered Plaintiff's power wheelchair to San Leandro Hospital. While delivering the power wheelchair to Plaintiff's room, Plaintiff's nurse stated something to the effect of, UCSFMC had "planned to donate" the chair but changed course. The motive behind the delivery appears to be a further attempt to manufacture justification for discharge. No request had been made by Plaintiff to deliver the power wheelchair to the hospital. He had no ability to transport it, and the delivery appeared to be part of a contrived effort to facilitate discharge without actually providing meaningful care.

65. On January 30, 2025, Ms. Ahn confirmed with San Leandro that Plaintiff had 30 days of skilled nursing benefits available, yet still denied LTAC placement, falsely claiming Plaintiff lacked medical necessity—even after multiple clinical assessments proved otherwise.

66. **Eden Medical Center:** Plaintiff discharged from San Leandro Hospital on February 1, 2025, and transported to Eden Medical Center for assistance with placement and

treatment—another facility change driven by a lack of proper care, bureaucratic indifference, and insurance denial and deliberate indifference.

67. Plaintiff was admitted to Eden Medical Center and placed in an "observation status". Plaintiff remained in an observation status for the duration of his hospital stay. This allowed the hospital to treat Plaintiff as an outpatient even though he was an inpatient.

68. "Observation Admission" refers to a patient who has been admitted to the hospital as an outpatient for observation services rather than being officially admitted as an inpatient. An "Observation Admission" is typically only for 48 hours.

69. On February 3, 2025, Plaintiff was evaluated by two wound nurses at Eden Medical Center who "highly" recommended LTAC placement.

70. On February 3, 2025, Eden Medical Center contacted Ms. Ahn to discuss discharge planning. Ms. Ahn advised something to the effect of, she had been on Plaintiff's case for "2 plus years" and that "all attempts at placement have been unsuccessful or short lived" in addition to other disparaging comments. Still, there was no documentation of any reasonable action taken or efforts made by Ms. Ahn to facilitate placement or the provision of medically necessary services.

71. The following day, Plaintiff was evaluated by PT and OT who agreed that Plaintiff could benefit from LTAC placement. Despite the initial assessments from therapy and wound care specialists, days later this care was cut back.

72. On February 10, 2025, Eden Medical Center case manager Sarah Dull and a representative from physical therapy notified Plaintiff that it was determined that Plaintiff was at "baseline" and not a candidate for rehabilitation, and that he would receive no further physical or occupational therapy, despite therapy being clinically indicated for Plaintiff's condition. That same day, Plaintiff's wound care was reduced from daily to three times a week.

73. Plaintiff also requested a notetaker for discharge planning discussions, however was not consistently provided notes or a comparable accommodation.

74. In addition, Ms. Dull advised Plaintiff that because he was in an "observation" status and not an "inpatient" status he was not eligible for LTAC placement either.

75. From that day forward, Plaintiff received no further rehabilitative therapy to ambulate out of bed or maintain his current level of functioning.

76. Plaintiff alleges that both the determination that Plaintiff was at "baseline" and the decision to withhold treatment because of Plaintiff's disability status amounts to unlawful disability discrimination and violates Plaintiff civil rights, liberties and protections.

77. On Saturday, March 8, 2025, Plaintiff left Eden Medical Center due to inadequate placement assistance, lack of proper wound care, and lack of rehabilitation services. Plaintiff is under the information and belief that following discharge Eden Medical Center reported Plaintiff to Adult Protective Services (APS) for "self-neglect"

78. The decisions Eden Medical Center were reckless and effectively sabotaged any chance of Plaintiff qualifying for acute rehab, skilled nursing care, and LTAC by both keeping Plaintiff in an observation status and by removing the very medical services that justified such placement. The actions of Defendants were arguably negligent and inhumane, and also discriminatory.

79. The narrative surrounding Plaintiff's hospitalizations and discharges that is memorialized in Plaintiff's medical record has obstructed Plaintiff's ability to obtain medically necessary health care and has inflicted emotional distress and humiliation on Plaintiff. Statements to the effect of, "UCSF had to obtain a court order to have him discharged," and other statements that suggest that Plaintiff is "hospital hopping" or

AMENDED COMPLAINT

otherwise squandering health resources he does not need are contrary to Plaintiff's clinical reality and must stop.

80. UCSFMC and BCBSA have intentionally provided incomplete and/or inaccurate hospitalization and hospital discharge information to his providers in an effort to sabotage his ability to obtain and maintain the health care necessary to manage his medical conditions and to maintain function as a result of his race and/or disability.

81. Plaintiff's ordeal reflects a pattern of systemic neglect, discrimination based on disability and in some instances race, and deliberate sabotage of his access to medically necessary care. Defendants worked in concert—or at minimum, through parallel inaction—to engineer unsafe discharges, deny vital rehabilitation, and ultimately abandon Plaintiff to deteriorating health outcomes.

82. **Summary of Wrongdoing:** The actions and inactions of the Defendants described above form the basis of the causes of action below. In summary, OPM and Blue Cross wrongfully withheld insurance benefits needed for Plaintiff's care, and failed to accommodate or consider his circumstances, thereby violating anti-discrimination laws and his due process rights. The hospital entities (UCSF, AHS, and Eden) and their staff failed to ensure Plaintiff was treated equally and safely, by attempting to discharge him without the accommodations and plans that a person in his condition requires, thus violating disability rights laws and, in the case of UCSF and Royal Ambulance, committing the tort of false imprisonment. All Defendants' conduct contributed to a situation in which Plaintiff's health and dignity were jeopardized.

83. Plaintiff now brings the following causes of action against Defendants, incorporating all the above allegations:

**COUNT ONE**
**Violation of the Federal Employees Health Benefits Act (FEHBA)**

(Against Defendants OPM and Blue Cross Blue Shield Association)

84. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

85. The Federal Employees Health Benefits Act (FEHBA), 5 U.S.C. §§ 8901–8914, governs the administration of health benefits for federal employees, including Plaintiff. Under FEHBA and the governing contract between the U.S. Office of Personnel Management (OPM) and the Blue Cross and Blue Shield Association (Service Benefit Plan), medically necessary treatments prescribed by treating physicians are to be covered when they meet established criteria.

86. Plaintiff's treating physicians provided medical documentation that he met the applicable criteria for medically necessary inpatient rehabilitation and related treatments following a serious medical episode. Despite this, Defendants OPM and Blue Cross denied coverage for these treatments, including denials related to Reference Nos. X7002, X6001, and X0004.

87. Blue Cross breached its obligations under the FEHB Service Benefit Plan contract by denying benefits for covered services, including medically necessary rehabilitation therapy and related post-hospital care. OPM failed to enforce the terms of the FEHB contract and improperly upheld the denials or declined to review claims when the carrier failed to respond.

88. To the extent OPM declined to consider certain claims because Plaintiff allegedly did not exhaust remedies at the carrier level, Plaintiff contends he attempted to do so. Blue Cross's failure to respond timely created constructive denials. OPM had the authority—and the obligation—to treat those as appealable under its jurisdiction and provide review. By not doing so, OPM deprived Plaintiff of the benefits without substantive review, contrary to the FEHBA regulations and the purpose of the statute.

89. As a direct result of Defendants' failure to meet their obligations under FEHBA, Plaintiff suffered irreparable physical harm, emotional distress, and financial loss. The denial of coverage caused deterioration in his health, delayed treatment, and unnecessary suffering, as well as out-of-pocket costs for care that should have been covered.

90. Plaintiff seeks declaratory relief recognizing that Defendants' denials violated FEHBA and the governing benefit plan provisions. Plaintiff further seeks an injunction compelling Defendants to authorize and provide coverage for the medically necessary services that were previously denied, including reimbursement for privately incurred costs and future treatment necessitated by the delay. Plaintiff also seeks any other relief the Court deems just and proper.

**COUNT TWO**
**MEDICAL NEGLIGENCE**
(Against Defendants The Regents of the University of California d/b/a UCSF Medical Center ("UCSFMC") and Royal Ambulance, Inc.)

91. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

92. At all times relevant, Defendants Regents dba UCSFMC and Royal Ambulance owed Plaintiff a legal duty to exercise that degree of skill, care, and knowledge ordinarily possessed and exercised by reasonably careful medical providers and transportation providers under similar circumstances.

93. Defendants further owed Plaintiff specific statutory duties under California Health & Safety Code §1262.5(b) and (d) to arrange a safe and adequate discharge plan that reasonably accounted for Plaintiff's medical needs, level of acuity, and functional limitations.

94. Defendants breached their duties of care as follows:

- On or about January 13, 2025, UCSFMC discharged Plaintiff to a home setting without ensuring that appropriate care or supervision was available, despite clear knowledge that no responsible adult would be present, and that Plaintiff required significant assistance with mobility, wound care, and activities of daily living.

- UCSFMC arranged for Plaintiff's transportation by Royal Ambulance without providing sufficient instructions or safeguards to protect Plaintiff's medical and physical well-being during transport.

- UCSFMC and Royal Ambulance restrained Plaintiff in a gurney for approximately five hours without providing for his basic care, comfort, or ability to safely exit the ambulance, causing him to experience significant physical discomfort, fear, and emotional distress.

- Royal Ambulance transported Plaintiff to Highland Hospital without his informed consent, in direct contravention of his expressed wishes, thereby depriving him of autonomy over his care and placement.

95. Defendants' acts and omissions violated the standard of care required under both common law negligence principles and statutory duties imposed by California Health & Safety Code §1262.5 and California Code of Civil Procedure §340.5.

96. Plaintiff has suffered prior unsafe discharges at Regents facilities. Specifically, Plaintiff was discharged by UCSFMC to an out-of-state facility on or about March 9, 2022 without proper care coordination or continuity of care in violation of CCP 1262.5. Three days after being transferred, Plaintiff needed to be hospitalized due to an exacerbation of his health condition. Plaintiff was also discharged by UCLA Medical Center to a skilled nursing facility without proper care coordination in violation of

1262.5. Three days after being transferred, Plaintiff needed to return to the hospital for medications that could not be provided or coordinated by the facility.

97.  As a direct and proximate result of Defendants' negligence, Plaintiff suffered:

- Physical injury, including stiffness, loss of sensation and pain.

- Emotional distress, fear, and humiliation stemming from being subjected to prolonged restraint and forced transport.

- Worsening of his medical condition due to delayed and inadequate care.

- Loss of access to medically appropriate rehabilitation services.

98. Defendants' negligent conduct was a substantial factor in causing Plaintiff's injuries, damages, and losses.

99. Plaintiff seeks all recoverable damages, including general and special damages for physical harm, emotional distress, past and future medical expenses, and any other relief the Court deems just and proper

## V.    COUNT THREE
### Negligent Infliction of Emotional Distress
(Against Defendants Regents/UCSFMC, Royal Ambulance, BCBSA)

100.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

101.    Defendants owed Plaintiff a duty of care to provide safe, medically appropriate treatment and discharge planning, and to avoid causing foreseeable harm, including emotional distress, in the course of delivering healthcare and insurance services.

102.    Defendants breached their duty of care in multiple ways, including but not limited to:

a. UCSFMC and Regents discharged Plaintiff to an empty home without ensuring the availability of appropriate care or support, despite full knowledge of his severe

AMENDED COMPLAINT

disabilities and that no caregiver would be present.

b. UCSFMC and Royal Ambulance restrained Plaintiff for approximately five hours in the back of an ambulance while attempting to forcibly place him in his home without consent, knowing he lacked the physical ability to remove himself from the situation or protect himself.

d. UCSFMC and other Defendants failed to provide complete and accurate information to Plaintiff regarding his discharge appeals, discharge plans, and medical records, preventing him from participating meaningfully in his own care and appeals.

e. BCBSA repeatedly denied or delayed medically necessary treatment, rehabilitation, and wound care, despite knowing that failure to provide such care posed significant risks to Plaintiff's health and well-being.

103.    Defendants knew or should have known that their conduct would foreseeably cause Plaintiff emotional distress, given his medical vulnerability, reliance on their services, and the traumatic circumstances created by their actions.

104.    As a direct and proximate result of Defendants' negligent acts and omissions, Plaintiff suffered severe emotional distress, including anxiety, fear, helplessness, humiliation, and psychological trauma, as well as physical deterioration that further contributed to his mental suffering.

105.    Defendants' conduct was the actual and proximate cause of Plaintiff's emotional injuries, and Plaintiff is entitled to recover damages for the emotional and mental harm he has endured.

## COUNT FOUR
### False Imprisonment (California Law)
(Against The Regents of UC/UCSF, Royal Ambulance, Misti Meador, Jackie Due, Chad Pantig, Jack Hinshaw, and Does 1–5)

106.     Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

107.     Under California law, false imprisonment is the unlawful violation of the personal liberty of another. It consists of restraining, confining, or detaining a person without their consent and without lawful authority, for an appreciable period of time, however brief.

108.     Defendants UCSF (The Regents, via its employees) and Royal Ambulance (via its employees) falsely imprisoned Plaintiff on January 13, 2025. As described, UCSF staff directed that Plaintiff be strapped to a gurney and taken away against his will, and Royal Ambulance staff carried out that directive by actually strapping and confining him.

109.     Plaintiff was aware of the confinement (he was conscious) and did not consent — to the contrary, he explicitly objected and asked to be taken to a hospital. Despite this, he was kept physically restrained for approximately five hours, unable to free himself. This detention was without lawful privilege. Plaintiff was a competent adult patient; there was no court order, no psychiatric 5150 hold, no arrest warrant, and no medical necessity that could justify overriding his refusal. The hospital clearly wanted to discharge him, as they threatened him with trespassing charges if he refused to leave the hospital, but that desire gave them no legal right to imprison him strapped to a gurney. Royal Ambulance similarly had no legal authority to hold Plaintiff once he said "no" to the transport.

110.     The confinement ended only when, after hours, Defendants gave up the forced discharge attempt and took him to a county hospital instead of the hospital he requested. By then, the tort of false imprisonment was complete. Does 1–5 include

UCSF supervisors or security personnel and Royal Ambulance employees who participated in or ordered the restraint of Plaintiff.

111.    As a direct result of this false imprisonment, Plaintiff suffered damages. He experienced loss of sensation in his lower extremities, stiffness and pain and discomfort from being restrained (his contracted limbs forced flat). He also suffered extreme emotional distress, fear, and humiliation. Being helplessly tied down inflicted trauma and a sense of degradation that persisted long after the incident. Plaintiff feared for his safety during the ordeal, feeling completely powerless.

112.    The Regents of UC (UCSF) is vicariously liable for the acts of its employees under the doctrine of respondeat superior, because those acts (even if unauthorized) occurred in the course of discharging Plaintiff from the hospital, within the scope of their employment. Royal Ambulance is vicariously liable for the acts of its EMTs/paramedics who restrained Plaintiff, as those acts were within the scope of their employment duties (transporting patients, albeit carried out unlawfully here). Additionally, those individual employees (Does) are personally liable to Plaintiff, though they are not yet named.

113.    Plaintiff seeks damages under California law for false imprisonment. He demands compensation for his physical pain and emotional suffering caused by the unlawful confinement. He also seeks punitive damages against the individual Royal Ambulance employees (and Royal Ambulance itself, as it ratified or allowed the conduct) because the actions were willful, oppressive, and in conscious disregard of Plaintiff's rights. (Punitive damages are not sought against The Regents as a public entity, per Cal. Gov. Code § 818.) Plaintiff also seeks to recover any economic losses related to this incident, and he will seek an award of reasonable costs and interest as permitted by law.

**COUNT FIVE**
**Violation of 14th Amendment – Due Process and Equal Protection**
(As to Defendants BCBSA, Regents, Alameda County Health System, Eden Medical Center,
Dr. Youssef, Peraza, Ahn, Dull, Misti Meador, Jackie Du, Chad Pantig, Jack Hinshaw)

114.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

115.    The Fourteenth Amendment prohibits any state or state actor from depriving a person of life, liberty, or property without due process of law, and from denying any person equal protection of the laws.

**Due Process Violations**

116.    Plaintiff possesses a constitutionally protected property interest in receiving the public healthcare benefits to which he is entitled, including coverage under Medicare Part A and Medi-Cal, as well as benefits contractually conferred under his FEHBA insurance plan administered by Defendant BCBSA.

117.    Once conferred by statute or contract, these benefits cannot be arbitrarily withheld, denied, or obstructed without adequate notice and an opportunity to contest the deprivation.

118.    As to all Defendants, Plaintiff alleges that they engaged in customs, practices, or policies—including systematic refusal to submit claims to Medicare and Medi-Cal—that deprived Plaintiff of access to his vested health benefits and post-hospital care.

119.    Defendants' refusals to submit claims for covered inpatient care to Medicare and Medi-Cal deprived Plaintiff of the very coverage necessary to secure his health and safety, while simultaneously coercing him into unsafe discharges without any opportunity to challenge these decisions through timely appeals or hearings. Defendant

Blue Cross further violated the law by suspending his medical coverage while Plaintiff appealed the denial of his claims.

120.     Medicare Part A benefits attach upon hospital admission and constitutes a protected property interest. As a Medicare Part A beneficiary, Plaintiff was entitled to rely on this coverage for medically necessary inpatient care. Defendants' failure to submit claims or deliberately classifying Plaintiff as "observation" status at Eden Medical Center denied him this property interest and prevented any meaningful opportunity for review.

121.     At UCSFMC, Regents' employees—including Case Manager Jackie Du— initiated a hospital discharge appeal without Plaintiff's consent, submitted incomplete and misleading information to the review agency (Livanta), and intentionally withheld evidence and Plaintiff's direct contact information, effectively sabotaging Plaintiff's ability to contest the termination of his hospital benefits.

122.     Plaintiff attempted to challenge this discharge through a reconsideration process, but UCSFMC's refusal to provide the records and materials used in the original appeal deprived him of the ability to meaningfully participate or cure the procedural deprivation.

123.     Similarly, Eden Medical Center kept Plaintiff in "observation" status for over 35 days, depriving him of inpatient coverage without notice or the opportunity to contest this status or secure appropriate post-acute care benefits through Medicare or Medi-Cal.

124.     Defendants' arbitrary and inconsistent application of appeals processes, deliberate delays, failure to provide required notices, and active obstruction of Plaintiff's attempts to secure his benefits deprived him of constitutionally adequate procedural protections.

125.     Plaintiff suffered significant harm as a direct result of these due process

violations, including prolonged bed confinement, loss of access to medically necessary

treatment and rehabilitation, physical deterioration, and severe emotional distress.

**Equal Protection Violations**

126.     Plaintiff is a disabled African American male—a member of protected classes

under federal and state civil rights laws.

127.     Plaintiff alleges that Defendants treated him differently than similarly situated

patients without disabilities and patients outside his racial group, by systematically

denying or obstructing his access to medical benefits, rehabilitation therapies, and safe

discharge planning.

128.     Defendants failed to apply the same policies, procedures, or standards used for

non-disabled or non-minority patients, including refusing to submit claims to

secondary payers (Medicare and Medi-Cal), downgrading Plaintiff's care level without

medical justification, and denying medically necessary therapies that were approved

for other patients with comparable conditions.

129.     Defendants' conduct reflects disparate treatment and, at minimum, disparate

impact resulting from the application of policies and customs that disproportionately

harmed Plaintiff because of his disability and race.

**Conscience-Shocking Conduct**

130.     Defendants' actions, including abandonment of care, coerced unsafe discharges,

falsification of medical records, and obstruction of appeals processes, were arbitrary,

oppressive, and shock the conscience.

131.      Such conduct reflects deliberate indifference to Plaintiff's constitutional rights and well-being and exceeds the bounds of decency in a civilized society.

**Harm**

132.      As a direct and proximate result of Defendants' violations of the Fourteenth Amendment, Plaintiff has suffered substantial harm including:

- Denial of necessary medical benefits and services.
- Physical injuries and deterioration due to lack of care.
- Suspension of medical benefits during appeal process.
- Emotional distress, humiliation, and mental anguish.
- Economic losses, including out-of-pocket medical expenses and costs associated with appeals and legal representation.

133.      Plaintiff seeks all available legal and equitable relief, including declaratory relief, injunctive relief, compensatory damages, and punitive damages where permitted by law.

**COUNT SIX**
**Violation of Rights Under Medicare/Medicaid and EMTALA (42 U.S.C. § 1983)**
(Against The Regents of the University of California/UCSF, Alameda Health System, Eden Medical Center, Dr. Youssef, Veronica Peraza, Sarah Dull, Misti Meador, Jackie Du)

134.      Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as though fully set forth herein.

135.      This cause of action is brought pursuant to **42 U.S.C. § 1983** to redress violations of Plaintiff's rights under federal statutes and the United States Constitution. At all relevant times, Defendants UCSF (The Regents), Alameda Health System

(AHS), Eden Medical Center, and their agents and employees acted under color of state law.

136.    Defendants deprived Plaintiff of rights secured by federal statutes, including:

- The **Emergency Medical Treatment and Active Labor Act (EMTALA)**, 42 U.S.C. § 1395dd, which prohibits participating hospitals from discharging or transferring a patient without stabilizing care and without informed consent.

- The **Medicare Act**, 42 U.S.C. § 1395x and **42 C.F.R. § 482.43**, which require hospitals to develop and implement discharge planning that meets the continuing care needs of patients.

- The **Medicaid Act**, including but not limited to 42 U.S.C. §§ 1396a(a)(3), (a)(8), and (a)(10)(B), which guarantee timely access to benefits, equal treatment, and due process protections.

- The **Fourteenth Amendment** to the United States Constitution, which protects liberty and property interests and prohibits deprivation without due process of law.

**Violation of EMTALA and Medicare Discharge Planning**

137.    UCSF, as a Medicare-participating hospital, violated EMTALA by attempting to discharge Plaintiff on January 13, 2025, when he was medically unstable and without his informed consent. UCSF disregarded federal requirements to secure a safe, appropriate discharge and failed to obtain Plaintiff's voluntary acceptance of transfer.

138.    UCSF, Alameda Health System, and Eden Medical Center failed to comply with **42 C.F.R. § 482.43**, which mandates appropriate discharge planning tailored to the patient's condition and care needs. Defendants instead coerced Plaintiff into unsafe

discharges without securing continuity of care, directly jeopardizing his health and violating his statutory rights.

**Violation of Medicaid Act Rights**

139.    Defendants systematically failed to submit claims for covered services to Medicare and Medi-Cal, thereby denying Plaintiff access to benefits to which he was entitled. Defendants' policies and practices prevented Plaintiff from receiving medical services funded by his secondary (Medicare) and tertiary (Medi-Cal) coverage.

140.    Specifically, Defendants violated:

- **42 U.S.C. § 1396a(a)(3)** by depriving Plaintiff of notice and an opportunity to challenge the denial or withholding of benefits.
- **42 U.S.C. § 1396a(a)(8)** by failing to provide timely benefits.
- **42 U.S.C. § 1396a(a)(10)(B)** by denying Plaintiff benefits provided to other similarly situated Medicaid beneficiaries.

141.    These statutory provisions create enforceable rights under § 1983, and Defendants' actions or inactions were performed under official customs or policies, as evidenced by the repeated failure to submit claims, coordinate benefits, or comply with mandated discharge procedures.

**Violation of Fourteenth Amendment Due Process and State-Created Danger**

142.    Plaintiff possessed constitutionally protected property interests in his Medicare and Medicaid benefits, and liberty interests in receiving medically appropriate care and freedom from unlawful confinement or abandonment.

143.     Defendants deprived Plaintiff of these interests without adequate notice, opportunity to be heard, or fair procedural safeguards. By unilaterally discharging Plaintiff to unsafe environments, refusing to process claims to secondary payers, and denying him access to appeals and reconsideration processes, Defendants arbitrarily deprived Plaintiff of benefits and endangered his health.

144.     Defendants also created or exacerbated a known danger by affirmatively placing Plaintiff into situations of harm — including leaving him confined in an ambulance without the ability to leave, coercing him into unsafe discharges, and failing to provide necessary medical care — without providing the protections required by law.

145.     These actions and omissions were not isolated incidents but reflected deliberate choices and policies of UCSF, Alameda Health System, and their agents.

**Injury and Relief**

146.     As a direct and proximate result of Defendants' violations of Plaintiff's federally protected rights, Plaintiff suffered:

- Physical deterioration and disability progression.
- Emotional distress and humiliation.
- Loss of access to entitled medical benefits.
- Unwarranted medical costs and financial harm.

147.     Plaintiff seeks compensatory damages, declaratory relief, injunctive relief to compel compliance with discharge planning and benefits coordination requirements, and attorney's fees pursuant to **42 U.S.C. § 1988**.

**COUNT SEVEN**
**Violation of Americans with Disabilities Act (ADA) Title II**
(Disability Discrimination by Public Entities – Against The Regents of UC/UCSF and
Alameda Health System)

148.      Plaintiff realleges and incorporates by reference all allegations set forth in this

Complaint as if fully set forth herein.

149.      Title II of the ADA (42 U.S.C. § 12131 *et seq.*) provides that no qualified

individual with a disability shall, by reason of such disability, be excluded from

participation in or denied the benefits of the services, programs, or activities of a

public entity, or be subjected to discrimination by any such entity. Defendants The

Regents of the University of California (operating UCSF Medical Center) and

Alameda Health System are "public entities" under Title II. Plaintiff is a qualified

individual with a disability under the ADA, as he has a physical impairment that

substantially limits major life activities and meets the eligibility requirements for the

services provided by these entities (hospital and medical services).

150.      Title II imposes on UCSF and AHS the obligation to make reasonable

modifications in policies, practices, and procedures to avoid discrimination, and to

furnish appropriate auxiliary aids and services for effective communication, unless

doing so would fundamentally alter the nature of the service. It also prohibits public

entities from administering programs in a discriminatory manner.

151.      **UCSF (Regents) Violations:** UCSF failed to make reasonable modifications to

safely accommodate Plaintiff in its discharge planning. Instead of adjusting its usual

practice (e.g., by allowing a longer inpatient stay while securing a rehab placement or

coordinating with social services due to Plaintiff's unique needs), UCSF tried to follow

a "standard" discharge timeline that was inappropriate for Plaintiff. UCSF staff did not

effectively communicate or engage with Plaintiff about his post-discharge care—

ignoring his request for information in writing or other accessible format—even though they knew he could not take notes due to his disability.

152.    This lack of accommodation and ensuing attempt to prematurely discharge Plaintiff "by reason of" his disability (i.e., because he needed special arrangements that they chose not to provide) violated Title II. By essentially treating his prolonged care needs as not their problem, UCSF denied Plaintiff the benefit of its health program (continued medical care until safe discharge) that it offers to others. A non-disabled patient or a patient with readily available placement would not have been discharged in such a hazardous manner.

153.    **Alameda Health System Violations:** Alameda Health System, once it took over Plaintiff's care, also did not meet Title II requirements. While Highland Hospital gave Plaintiff temporary care, AHS did not ensure effective communication or planning either. For instance, AHS did not provide Plaintiff with a clear understanding of his options or any advocate to help due to his disabilities. When coordinating post-acute care, AHS did not reasonably modify its policy of transferring out patients as soon as they are stable, despite knowing Plaintiff had nowhere adequate to go. Ultimately, AHS effectively discharged Plaintiff from Highland without ensuring a safe landing spot, which is a denial of benefits of its program (emergency/continued care services) by reason of his disability and health status. If Plaintiff had not been as severely disabled, AHS might not have been so quick to move him along; thus, their actions were driven by the challenges his disability posed.

154.    The failure of UCSF and AHS to accommodate Plaintiff was not due to any fundamental alteration or undue burden. The accommodations needed—time, coordination, communication—were reasonable under the circumstances given the

high stakes for Plaintiff's health. Their refusal to adjust or assist constitutes

discrimination under Title II.

155.    As a proximate result of UCSF's and AHS's ADA violations, Plaintiff

experienced physical harm (from the interrupted medical care), severe emotional

distress, and loss of his rights to equal access. Pursuant to Title II (42 U.S.C. § 12133,

incorporating remedies of the Rehabilitation Act), Plaintiff seeks injunctive relief

requiring these public entities to change their policies (such as mandating ADA-

compliant discharge planning and staff training on accommodating patients with

disabilities). Because Defendants' conduct was at least deliberately indifferent to

Plaintiff's rights, Plaintiff also seeks compensatory damages against them to redress

his injuries. Attorneys' fees and costs are additionally recoverable (42 U.S.C. § 12205).

### COUNT EIGHT
### Violation of Americans with Disabilities Act (ADA) Title III
(Disability Discrimination by Private Entities – Against Eden Medical Center and Royal
Ambulance, BCBSA)

156.    Plaintiff realleges and incorporates by reference all allegations set forth in this

Complaint as if fully set forth herein

157.    Title III of the ADA (42 U.S.C. § 12181 *et seq.*) prohibits discrimination on the

basis of disability in the full and equal enjoyment of the goods, services, facilities,

privileges, advantages, or accommodations of any place of public accommodation by

private entities. Private hospitals (such as Defendant Eden Medical Center), private

insurance companies (BCBSA), and private transportation services that serve the

public (such as Defendant Royal Ambulance) are "public accommodations" under

ADA Title III. Title III requires these Defendants to make reasonable modifications to

policies and practices when necessary to provide equal services to disabled individuals

AMENDED COMPLAINT

(unless a fundamental alteration would result), and to provide necessary auxiliary aids for effective communication.

158.    **Eden Medical Center Violations:** Eden Medical Center failed to provide Plaintiff with full and equal enjoyment of its hospital services. Eden was aware of Plaintiff's condition and disability needs, yet it did not accommodate him by allowing a longer stay or finding an appropriate rehabilitation solution. Instead, Eden adhered to policies driven by payment concerns, effectively prioritizing those over Plaintiff's need for continued care due to disability. Eden also did not ensure effective communications or reasonable accommodations like providing discharge notes or comparable assistance to understand or respond. By moving to discharge Plaintiff quickly, Eden treated him differently from other patients – a patient without disabilities (or with insurance coverage) would have been allowed to remain until truly ready for discharge. This denial of equal service was by reason of disability, violating Title III.

159.    **Royal Ambulance Violations:** Royal Ambulance denied Plaintiff the full and equal enjoyment of its transportation services by restraining him when such restraint was not a standard practice for non-disabled persons using their service. A typical patient transport would require consent or at least not involve prolonged strapping down absent a medical necessity. Royal's action in holding Plaintiff against his will indicated that they did not treat him as an equal customer but rather as someone whose autonomy could be ignored due to his condition (he was treated as cargo to be moved, not as a person with rights). Royal Ambulance failed to make a reasonable modification to its normal practice when confronted with a patient who did not consent to transfer – the reasonable step would have been to release him or not transport him against his will, but they persisted because he was a disabled individual left in their care. This conduct constitutes discrimination under Title III.

160.     **Defendant BCBSA/Ahn violations:** Excluding Plaintiff from participation in, and denying him the benefits of, their healthcare programs and services because of Plaintiff's race and disability. As described above, Defendants failed to provide Plaintiff with equal and effective access to medically necessary health services: they denied and delayed approvals for critical treatments and rehabilitation, withheld medical treatment, left Plaintiff effectively confined without appropriate accommodations, and did not make modifications or adjustments to their policies to account for Plaintiff's condition. In addition, defendants made disparaging comments about Plaintiff's medical history to his providers. These actions (and inactions) treated Plaintiff differently and worse than individuals without disabilities who seek health services, and had the effect of denying Plaintiff the same opportunity to benefit from Defendants' health programs as nondisabled persons. In short, Plaintiff was subjected to adverse treatment and deprived of healthcare by reason of his disability.

161.     Title III violations entitle Plaintiff to injunctive relief (42 U.S.C. § 12188). As a result of Eden's and Royal's actions, Plaintiff suffered the injuries previously described (trauma, pain, loss of access to care). Plaintiff seeks an injunction requiring Eden to adopt nondiscriminatory admission/discharge practices for patients with disabilities (for example, to not deny post-acute care to a person solely because of disability-related needs or insurance issues without exhausting all safe alternatives). He also seeks an injunction requiring Royal Ambulance to revise its policies to ensure no patient is subjected to non-consensual transfer and prolonged restraint due to disability. Although Title III does not provide for damages in a private action, Plaintiff seeks any available **equitable** monetary relief (such as refund of charges, if any, for the ambulance incident) and recovery of his reasonable attorneys' fees and costs.

**COUNT NINE**
**Violation of Rehabilitation Act § 504**
(Disability Discrimination in Federally-Funded Programs – Against Blue Cross & Blue Shield Association, The Regents of UC/UCSF, Alameda Health System, Eden Medical Center, and Royal Ambulance)

162.    Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

163.    Section 504 of the Rehabilitation Act (29 U.S.C. § 794) provides that no qualified individual with a disability shall, solely by reason of disability, be excluded from participation in, denied the benefits of, or subjected to discrimination under any program or activity receiving Federal financial assistance.

164.    Each Defendant named in this Count operates a "program or activity" receiving federal financial assistance: (a) BCBSA administers the FEHB Service Benefit Plan, which is funded in part by federal contributions; (b) The Regents of UC (UCSF Medical Center) and Alameda Health System receive federal funds via Medicare/Medicaid for their hospital programs; (c) Eden Medical Center receives Medicare and other federal health payments; and (d) Royal Ambulance receives federal reimbursements for medical transport services.

165.    Plaintiff is a qualified individual with a disability who met the essential eligibility requirements for the services and programs these Defendants provide (health insurance coverage, hospital care, and medical transportation).

166.    Defendants discriminated against Plaintiff solely on the basis of his disability, as follows:

- **Blue Cross and Blue Shield Association:** Through its actions in administering Plaintiff's health plan, Blue Cross denied benefits that would have been provided to others, because those benefits were needed for Plaintiff's disabling condition. Blue

Cross applied clinical guidelines and benefit limitations without considering Plaintiff's special circumstances, effectively denying him coverage that non-disabled plan participants would enjoy. For instance, Blue Cross refused inpatient rehab coverage for Plaintiff while routinely approving similar rehab for patients with other conditions, thereby providing unequal benefits to Plaintiff because of his disabilities. This had the effect of excluding Plaintiff from the health program's benefits due to his disability.

- **UCSF Medical Center (The Regents):** UCSF failed to provide its healthcare services to Plaintiff on an equal basis. By attempting to discharge him without a safe plan and not accommodating his notetaking and care needs, UCSF denied Plaintiff the full benefit of its hospital services. A non-disabled patient would not have been forced out under similar conditions. UCSF's conduct—treating Plaintiff as a problem because of his extensive care requirements—constituted discrimination "solely by reason of" his disability, as they would have handled a patient without such disabilities differently (allowing a normal discharge process with appropriate planning, etc.).

- **Alameda Health System:** AHS likewise did not afford Plaintiff equal benefits of its services. While AHS did provide some interim care, it too treated Plaintiff's case as an exceptional burden due to his disabilities (seeking to transfer him out quickly). AHS did not take steps to ensure Plaintiff had any long-term solution, effectively abandoning him because of the complexity of his needs. This is tantamount to denying him the benefits of AHS's healthcare program (continued hospitalization or placement assistance) on the basis of disability.

- **Eden Medical Center:** Eden accepted Plaintiff briefly but then moved to discharge him rapidly, in part because his disability-related needs were expensive and inconvenient. Eden failed to accommodate Plaintiff's communication needs and did not allow him equal access to its inpatient services (daily wound care or providing

rehab). Eden's handling of Plaintiff can be inferred to be because of his disability status—he required more care than average, and Eden treated him differently as a result.

- **Royal Ambulance:** Royal, acting as a medical transport service, participated in unlawfully confining Plaintiff for a prolonged period solely because he was a disabled individual who could not walk away or resist. Royal Ambulance staff would not typically treat a patient in this manner unless there was a medical necessity or legal mandate; here, the only reason Plaintiff was subjected to this treatment was due to his disability and vulnerable status. This conduct denied Plaintiff the normal respect and agency afforded to others using their service, due to his disability.

167.    These Defendants' actions were not justified by any legitimate reason unrelated to Plaintiff's disability and acted with deliberate indifference towards his disability and civil rights. Plaintiff was "otherwise qualified" to receive their services with reasonable accommodations, but Defendants either failed to accommodate or outright denied him service. The discrimination was the sole reason for the adverse treatment, as evidenced by the fact that, but for Plaintiff's disabilities, the outcomes would have been different.

**168.**    As a result, Plaintiff suffered significant injuries: he was left without critical care, endured physical and emotional pain, and was humiliated by the way he was treated. He is entitled to appropriate relief under the Rehabilitation Act. Plaintiff seeks compensatory damages from each Defendant for the harm caused by their violations of § 504. He also seeks injunctive relief requiring these entities to take corrective actions (such as adopting proper discharge policies and non-discriminatory benefit practices) as detailed in the Prayer for Relief, so that neither he nor others with disabilities will be subjected to such unequal treatment in the future.

**COUNT TEN**
**Violation of Section 1557 of the Affordable Care Act (42 U.S.C. § 18116)**
**Race and Disability Discrimination**
(As to Defendants BCBSA, Regents, Alameda County Health System, and Eden Medical Center)

169.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

170.    At all relevant times, Plaintiff was a qualified individual with disabilities under federal law and a member of a racial minority group (African American) protected under Section 1557 of the Affordable Care Act (ACA), 42 U.S.C. § 18116.

171.    Section 1557 prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in any health program or activity receiving federal financial assistance or administered by an Executive agency.

172.    Defendants BCBSA, Regents (UCSF), Alameda County Health System, and Eden Medical Center are each health programs or activities receiving federal financial assistance, including but not limited to Medicare and Medicaid payments, federal contracts, and reimbursement from the Office of Personnel Management (OPM) for federal employee health benefits.

173.    Accordingly, each Defendant was obligated under Section 1557 to ensure that Plaintiff, as a person with disabilities and as an African American individual, was provided equal access to healthcare services and benefits without discrimination or disparate treatment.

174.    Despite these legal obligations, Defendants engaged in a pattern and practice of discrimination on the basis of Plaintiff's race and disability, including but not limited to:

- Denial and unreasonable delays of medically necessary treatments and rehabilitative care.

- Failure to process and pay claims in a timely and consistent manner.

- Withdrawal of previously authorized services.

- Providing incomplete or derogatory medical and discharge information to future care providers, impeding Plaintiff's ability to receive appropriate post-hospital care.

- Imposing burdens not applied to other patients outside of Plaintiff's protected classes, including unnecessary isolation and refusal to submit claims to secondary and tertiary insurers (Medicare and Medi-Cal) while Plaintiff was an inpatient.

175.    Defendant BCBSA withheld rehabilitative treatment and failed to authorize ongoing medically necessary care based, at least in part, on considerations of Plaintiff's disability and race. Defendants also failed to provide reasonable modifications to policies or practices that would have allowed equal access to necessary healthcare services.

176.    Defendants Regents, Alameda County Health System, and Eden Medical Center further discriminated:

- Refusing to provide Plaintiff with a notetaker or other accommodations during complex care planning meetings (Regents and Eden Medical Center), despite knowing his physical disability impeded his ability to take notes.

- Failing to offer or continue inpatient rehabilitation therapies typically afforded to non-disabled patients.

- Creating discharge plans that ignored Plaintiff's health condition, mobility limitations, and lack of safe placement.

- Failing to coordinate benefits properly or to submit claims to Medicare and Medi-Cal for coverage, depriving Plaintiff of the financial benefits and care continuity provided to other patients.

- Misrepresenting or omitting critical information in medical records that affected future placement and treatment options.

177.    Upon information and belief, similarly situated patients without disabilities or those not of African American descent did not experience similar denials of care, lack of accommodations, or derogatory medical reporting.

178.    Defendants' actions were not isolated incidents but reflected a sustained and deliberate indifference to Plaintiff's federally protected rights, even as Plaintiff and his representatives repeatedly advised Defendants of his protected status and the harm being caused by their conduct.

179.    As a direct and proximate result of Defendants' discriminatory acts and omissions, Plaintiff suffered serious physical injury, loss of function, pain and suffering, emotional distress, financial harm, and a significant decline in quality of life.

180.    Plaintiff is entitled to relief under Section 1557, including compensatory damages, declaratory relief recognizing Defendants' violations of federal law, and injunctive relief to prevent future discriminatory practices. Plaintiff further seeks attorneys' fees and costs pursuant to 42 U.S.C. § 18116 (which incorporates remedies under Title VI and Section 504 of the Rehabilitation Act).

**COUNT ELEVEN**
**Title VI of the Civil Rights Act of 1964 (Title VI) 42 U.S.C. 2000d Discrimination Based on Race and Disability**
**(As to Defendants OPM, BCBSA, UCSFMC, Alameda County Health System, Eden Medical Center)**

181.      Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

182.      Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, prohibits discrimination on the basis of race, color, or national origin in programs and activities that receive federal financial assistance. Title VI applies to any program or activity receiving federal funds, including healthcare programs administered by Defendants.

183.      Defendants are recipients of federal financial assistance and, as such, are prohibited from discriminating on the basis of race, color, or national origin in the provision of healthcare benefits and services.

184.      Defendants violated Title VI by discriminating against Plaintiff, an African American male with a disability, and subjecting Plaintiff to disparate treatment by: Denying or delaying or otherwise failing to provide coverage for treatments essential for Plaintiff's condition, despite medical necessity, and in a manner that disproportionately impacts him as a Black individual with a disability; Withholding rehabilitative treatment clinically indicated for Plaintiff's condition, and in a manner that disproportionately impacts him as a Black individual with a disability; Failing to provide accommodations as is required for individuals with disabilities under federal law; Failing to properly coordinate claims with secondary insurers, disproportionately affecting Plaintiff's ability to access and receive the medical care he needs; Providing incomplete and/or inaccurate hospitalization and hospital discharge information to providers in an effort to sabotage Plaintiff's ability to obtain and maintain the health care necessary to manage his medical conditions and to maintain function.

185.      As a result of Defendants' discriminatory practices, Plaintiff has suffered significant harm, including unnecessary delays in medical treatment, physical and emotional distress, and the deprivation of healthcare benefits that he is entitled to

under the FEHB Program. These actions, grounded in race and disability

discrimination, have left Plaintiff without equal access to healthcare services, directly

harming his well-being.

**COUNT TWELVE**
**Violation of ACA Section 2719 (42 U.S.C. § 300gg-19)**
(Against Defendant BCBSA)

186.     Plaintiff realleges and incorporates by reference all preceding allegations as

though fully set forth herein.

187.     Under Section 2719 of the Affordable Care Act (42 U.S.C. § 300gg-19), health

insurers are required to provide an internal claims and appeals process that affords

enrollees:

- A **full and fair review**.

- **Timely notice** of benefit denials.

- **Clear explanations** of the reasons for denials.

- The opportunity for **external review** where applicable.

188.     Defendant Blue Cross Blue Shield Association (BCBSA), through its Federal

Employee Program (FEP) and affiliates, was required to comply with these provisions

for Plaintiff's health benefit claims and appeals.

189.     Plaintiff submitted multiple claims and reconsideration requests for medically

necessary care, including but not limited to long-term acute care, rehabilitation, skilled

nursing, and durable medical equipment. Many of these requests were either:

- Denied without timely or adequate explanation.

-51-

- Not responded to at all within the required regulatory timeframes (including the 30-day response period under 5 C.F.R. § 890.105(e), the plan's 15-day response timeframe, or the urgent care timelines).

- Delayed for months (in some cases, BCBSA delayed decisions for almost 90 days, far exceeding both ACA and OPM regulatory deadlines).

190.    BCBSA also failed to provide:

- Proper **adverse benefit determination letters** explaining the specific reasons for denials.

- **Notice of appeal rights** as required.

- **Timely decisions** on urgent care requests, pre-service authorizations, and reconsideration appeals.

191.    These delays and failures deprived Plaintiff of the procedural protections guaranteed under Section 2719 and prevented him from receiving timely care, including hospital services, rehabilitation therapies, wound care, and necessary medical equipment.

192.    As a direct and proximate result of BCBSA's failure to comply with Section 2719, Plaintiff suffered harm including:

- Physical deterioration due to delays and denials of medically necessary treatment.

- Emotional distress from being denied fair access to his benefits.

- Increased financial liability for services that should have been covered.

- Loss of opportunity for timely rehabilitation and improved health outcomes.

193.     Plaintiff seeks all available relief under the ACA, including injunctive relief requiring BCBSA to comply with Section 2719 for any future claims, compensatory damages, and attorney's fees and costs as allowed by law.

**COUNT THIRTEEN**
**Violation of 42 U.S.C. §1985(3)**
(As to Defendants BCBSA, Regents, Alameda County Health System, Eden Medical Center, Dr. Youssef, Peraza, Ahn, Dull, Misti Meador, Jackie Du, Chad Pantig, Jack Hinshaw)

194.     Plaintiff realleges and incorporates by reference all prior allegations as if fully set forth herein.

195.     Under 42 U.S.C. § 1985(3), it is unlawful for two or more persons to conspire to deprive another of the equal protection of the laws, or of equal privileges and immunities under the laws.

196.     Plaintiff alleges that Defendants BCBSA, Regents (UCSFMC), Alameda County Health System (AHS), Eden Medical Center, Dr. Youssef, Veronica Peraza, Hyunji Ahn, Sarah Dull, Misti Meador, Jackie Du, Chad Pantig, and Jack Hinshaw acted in concert and conspired—either explicitly or implicitly—to deny Plaintiff access to medical services and benefits to which he was and is lawfully entitled based on his disability, race, and economic vulnerability.

197.     Defendants jointly engaged in a pattern and practice of denying, obstructing, and delaying Plaintiff's access to medically necessary care, rehabilitation, and insurance benefits. These acts included but were not limited to:

- Systematically withholding or delaying claims submissions to Medicare and Medi-Cal to obstruct Plaintiff's ability to receive federally funded benefits.
- Misrepresenting Plaintiff's medical condition and rehabilitation potential in records and discharge planning documents.

- Manufacturing or falsely documenting discharge readiness ("baseline" determinations) to justify premature or unsafe discharges.

- Colluding to avoid authorizations for long-term acute care (LTAC) and rehabilitation services.

- Manipulating appeals and grievance processes, including the submission of unauthorized, inaccurate hospital discharge appeals designed to sabotage Plaintiff's rights to Medicare and Medi-Cal coverage.

- Retaliating against Plaintiff and his family by initiating unwarranted reports to Adult Protective Services and law enforcement to coerce acceptance of dangerous discharge plans.

198.    These conspiratorial acts were motivated by invidiously discriminatory animus based on Plaintiff's disability, race (as a Black male), and economic vulnerability. Defendants' conduct disproportionately impacted Plaintiff as a disabled African American man who relies on public insurance programs and accommodations to supplement his coverage through BCBSA in order to receive adequate healthcare services.

199.    As public and private actors working jointly or with aligned interests, the Defendants acted under color of state law or with state actor participation sufficient to satisfy the state action requirement for §1985 liability.

200.    Defendants' concerted actions deprived Plaintiff of equal protection of the laws and equal privileges and immunities, including his rights under the Rehabilitation Act, the Americans with Disabilities Act, Medicare and Medicaid statutes, the Affordable Care Act, and his constitutionally protected property interest in health benefits and liberty interest in receiving necessary medical care.

201.     As a direct and proximate result of Defendants' conspiracy and discriminatory conduct, Plaintiff suffered significant physical harm, deterioration of his health, loss of mobility, emotional distress, financial harm, and violations of his federal civil rights.

202.     Plaintiff seeks compensatory damages, punitive damages against individual defendants where permitted, declaratory relief, and injunctive relief prohibiting Defendants from continuing discriminatory policies or coordinated denials of medically necessary care, as further specified in the Prayer for Relief.

**COUNT FOURTEEN**
**Violation of the Administrative Procedure Act (APA)**
(Unlawful Agency Action – Against Defendant OPM)

203.     Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

204.     OPM's final decisions denying Plaintiff's benefit appeals, including decisions on Reference Nos. X7002, X6001, and X0004, constitute final agency actions subject to judicial review under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706.

205.     OPM's denials were arbitrary, capricious, an abuse of discretion, and not in accordance with law (5 U.S.C. § 706(2)(A)). OPM failed to follow FEHBA law, the ACA and the Plan Brochure and demonstrate the following actions by OPM:

- Rubber-stamping Blue Cross's denials without adequate explanation or consideration of Plaintiff's unique medical needs.

- Ignoring key medical evidence that demonstrated the necessity of Plaintiff's prescribed treatments.

- Misapplying or misconstruing benefit eligibility standards.

- Declining to accept jurisdiction over appeals where Blue Cross failed to timely respond, despite regulatory provisions allowing constructive denials to be appealed to OPM.

- Codified timelines found in FEHB regulations are inconsistent with ACA 2719 and its implementing regulations. OPM failed to update its regulation to comply and to require BCBSA to comply.

206.    Plaintiff seeks judicial review of FEHBA regulations 5 CFR 890.105 and 5 CFR 890.107 and a declaratory relief as to: 1) Whether the FEHB program must comply with ACA 2719; 2) Whether these regulations comply with the internal appeal and external review mandate set forth in ACA 2719 and its implementing regulations for group health plans; and 3) if it is determined that the regulations are not in compliance, whether they should be set aside.

207.    Plaintiff has standing to obtain judicial review under the APA, as he has suffered a legal wrong and been harmed by the action and inaction of OPM when OPM discontinued reviewing his health benefits claims, failed to provide Plaintiff with expedited review of his urgent care denials, maintained external review procedures that were inconsistent with ACA 2719 and its implementing regulations, failed to provide Plaintiff with a final determination letter on his health benefits and failed to notify him that he had a right to appeal OPM decisions to the appropriate Federal district court, and failed to ensure that BCBSA processed denied health benefits appeals consistent with the ACA. The persistent delays in authorizing Plaintiff's health benefits or rendering final determinations were arbitrary and capricious and left Plaintiff without health care and contributing to the worsening of his Scleroderma symptoms and overall deterioration.

**COUNT FIFTEEN**
**Federal Torts Claims Act 28 U.S.C. §§1346, 2671-2680**
(As to Defendants OPM)

208.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

209.    The Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-2680 (1988), waives the sovereign immunity of the United States for tort actions arising from the negligence of government employees. The FTCA provides that federal district courts have exclusive jurisdiction over claims resulting from the negligence of federal employees. Prior to filing suit under the FTCA, an individual must first seek an administrative resolution of their claim as required by 28 U.S.C. § 2675(a). On or about July 12, 2024, Plaintiff filed an administrative claim with the United States Office of Personnel Management (OPM). On or about October 1, 2024, Plaintiff received a letter from OPM denying his claim, citing that the Federal Employees Health Benefits Act (FEHBA) is the exclusive administrative procedure for resolving health benefits claims. In addition to Plaintiff's disputed health insurance claims, Plaintiff is also alleging a violation of his civil rights, liberties, and protections that fall outside of the FEHBA. Plaintiff avers that FEHBA preemption regulations do not apply here.

210.    Plaintiff's is bringing claims under the Federal Tort Claims Act alleging state law claims under the Tom Bane Civil Rights Act (California Civil Code § 52.1), the California Unruh Civil Rights Act, and for infliction of emotional distress under California common law. These California state laws impose tort liability upon private persons and business establishments for the wrongful conduct alleged in Plaintiff's complaint.

211.    The California Unruh Civil Rights Act prohibits discrimination in the full and equal accommodations, advantages, facilities, provokes or services in all business

establishments. Defendants violated the Unruh Civil rights act when they unreasonably and intentionally denied Plaintiff access to his health insurance plan benefits based on his membership in a protected class. Specifically, Plaintiff's treating physicians have recommended specific treatments, therapies, and assistive devices to manage his condition and improve his prospects for recovery. However, Defendants have repeatedly denied authorization or coverage for these doctor-recommended treatments. In doing so, Defendants have failed to offer any medically appropriate alternatives. Instead of approving the prescribed rehabilitation or therapy—or providing an equivalent solution—Defendants simply issue blanket denials (or fail to respond at all), leaving Plaintiff without any viable treatment path that accommodates his medical condition and disability. This has stalled Plaintiff's rehabilitation and recovery, causing his condition to worsen due to lack of timely intervention.

212.    The Tom Bane Act safeguards individuals from any interference with their constitutional and statutory rights by threat, intimidation, or coercion. Defendants violated the Tom Bane Act when they administered health benefits claims, appeals, and reviews in a way to force or compel Plaintiff to forego treatments or to withdraw from his health plan. California courts recognize a suit against a private employer under this statute. See, *Stamps v. Superior Court*, 136 Cal. App.  4th 1441 (2006). Specifically, Defendants have often ignored Plaintiff's claims, appeals, and inquiries regarding his healthcare coverage. In an effort to obtain treatment to manage his medical condition and disability, Plaintiff has submitted multiple grievances, appeals, and requests for reconsideration to contest the denials of coverage and to seek urgently needed care. Rather than providing Plaintiff with decisions that he could formally appeal or an explanation of his rights, Defendants frequently simply failed to respond or left claims in limbo for extended periods. Plaintiff avers that these failures in the administration of

Plaintiff's health benefits is intended to coerce Plaintiff to forego treatments or to withdraw from his health plan as a way to cut costs and limit coverage for individuals with his medical condition.

213.     California law recognizes the impacts of emotional distress caused by others, and courts allow Plaintiffs to seek compensation for it under California Civil Code Section 1714.

214.     Plaintiff alleges that OPM is liable under a theory of negligent supervision for the negligent supervision of employees and contractors involved in the administration of FEHB health benefits. OPM owed Plaintiff a duty of care to take reasonable steps to manage Plaintiff's health benefits in a way that would not cause harm and would not deprive him of his civil rights and liberties. OPM failed its duty by allowing its employees and contractors to deny, delay and otherwise fail to provide him with medically necessary health benefits that accommodate his care needs, level of acuity and mobility, and by failing to ensure that its employees and contractors complied with federal discrimination laws. OPM also failed its duty by failing to protect Plaintiff from discrimination in the provision of his health benefits by failing to properly investigate and correct the discrimination when it became aware of Plaintiff's complaints on or about March 2023, and continuing. As a result of OPM's negligence, Plaintiff was forced to go without medically necessary treatment and to endure mistreatment and discrimination, among other harms. Plaintiff asserts that these government employees were acting within the scope of their employment and under circumstances where the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred.

215.     Plaintiff further alleges OPM is liable in negligence based on the doctrine of "respondeat superior". Specifically, OPM's employees and contractors failed to act

reasonably in the administration, provision, and oversight of Plaintiff's healthcare

coverage under the FEHB Program, leading to harm to Plaintiff and deprivation of his

civil rights and protections. Plaintiff alleges that since 2022 and continuing, OPM,

along with its employees and contractors involved in administering the Federal

Employees Health Benefits (FEHB) Program, were negligent in their handling of

Plaintiff's health benefits and have failed to provide plaintiff with health benefits that

meet his care needs, level of acuity, and mobility, and by failing to ensure that its

employees and contractors complied with federal discrimination law.  OPM also failed

to take reasonable steps to investigate, prevent or correct unlawful discrimination,

harassment and retaliation in the administration of Plaintiff's health benefits once

they became aware of the allegations.  Plaintiff asserts that these government

employees were acting within the scope of their employment and under circumstances

where the United States, if a private person, would be liable in accordance with the law

of the place where the act or omission occurred.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and

against Defendants, and award the following relief:

### i.  As to All Counts:

1. **Compensatory Damages**

   For past and future medical expenses, pain and suffering, emotional distress, loss of

   dignity, and other non-economic and economic damages resulting from Defendants'

   violations of federal and state law, in an amount according to proof at trial.

2. **Punitive Damages**

Against all non-governmental Defendants where authorized by law, including but not limited to Blue Cross Blue Shield Association, Regents/UCSF, Eden Medical Center, Royal Ambulance, and any individual defendants whose actions were willful, malicious, or showed reckless disregard for Plaintiff's rights.

3. **Reasonable Attorney's Fees and Costs**

Pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 1988, 42 U.S.C. § 12205, California Civil Code §§ 52 and 54.3, the Equal Access to Justice Act, and any other applicable fee-shifting statutes.

### ii.  As to Count One (FEHBA) and Count Fourteen (APA):

3. **Declaratory Relief**

Declaring that OPM's denials of Plaintiff's health benefits were unlawful, arbitrary, and capricious, and that Blue Cross Blue Shield's denial of medically necessary care violated FEHBA plan terms and federal regulations.

4. **Injunctive Relief**

Compelling OPM and Blue Cross Blue Shield to process and approve Plaintiff's claims for covered benefits, reimburse Plaintiff for denied services, and ensure future compliance with FEHBA and the APA.

### iii.  As to Counts Two and Three (Negligence and NIED):

5. **Special Damages**

Including the costs of past and future medical care, personal care assistance, and related expenses.

**iv.  As to Count Four (False Imprisonment):**

6. **Damages for unlawful restraint and deprivation of liberty**

Including emotional harm, humiliation, and physical injury sustained during the

incident.

**v.  As to Counts Five, Seven, Eight, Nine, Ten, and Eleven**

**(Constitutional, ADA, Rehabilitation Act, ACA, and Title VI**

**claims):**

7. **Declaratory and Injunctive Relief**

Declaring that Defendants' actions and policies violated Plaintiff's constitutional and

statutory rights and ordering Defendants to cease discriminatory practices, adopt non-

discriminatory policies, and provide appropriate accommodations for Plaintiff's

disabilities.

8. **Prospective Relief**

Requiring Defendants to take affirmative steps to prevent future violations, including

policy revisions, staff training, and independent monitoring as appropriate.

**vi.  As to Count Six (Medicare/Medicaid & EMTALA) and Count**

**Twelve (ACA § 2719):**

9. **Compensatory Damages and Equitable Relief**

Including orders compelling compliance with Medicare, Medicaid, EMTALA, and

Affordable Care Act requirements, and restitution for improperly denied or delayed

care.

### vii.   As to Count Thirteen (42 U.S.C. § 1985(3)):

10. **Statutory Damages and Injunctive Relief**

For the conspiracy to deprive Plaintiff of his civil rights based on disability and race, including an injunction preventing further conspiratorial acts.

### viii.   Attorney's Fees and Costs:

11. **Reasonable Attorney's Fees and Costs**

Pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 1988, 42 U.S.C. § 12205, California Civil Code §§ 52 and 54.3, the Equal Access to Justice Act, and any other applicable fee-shifting statutes.

### ix.   As to Count Fourteen (APA):

12. **Injunctive Relief**

13. **Declaratory Relief**

### x.   As to Count Fifteen (FTCA):

14. **Compensatory Damages**

15. **Attorney's Fees & Costs**

### xi.   Further Relief:

16. **Any such other relief** as the Court deems just and proper, including pre-judgment and post-judgment interest, and ongoing Court supervision if necessary to enforce injunctive orders.

**b. DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and applicable law,

Plaintiff demands a trial by jury on all issues triable to a jury, including all damages

and liability issues under law.

Respectfully submitted,

DATED: May 1, 2025

_/s/_ Rhonda Lunsford
Rhonda Lunsford, Esq.